UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

OCEANSIDE ORGANICS;
OCEANSIDE FARM TO TABLE, INC.;
ALAN SHELTON; JUSTINE SHELTON;
RON MIROLLA; LISA RIGG;
MICHAEL WINKLEMAN; SARAH
DYAL; ANTHONY CARBONNE;
RICHARD DAVIS; DAVID SNYDER;
DUANE LEWIS; SANDRA LEWIS;
WAYNE LARSON; SHAWN SMITH;
KYLE SNELLER; BUCK
HUTCHERSON; LOGAN PIERCE;
BROOK BISHOP; RON BOCIAN,

                              Plaintiffs,

v.

COUNTY OF SAN DIEGO, SAN
DIEGO COUNTY SHERIFF'S
DEPARTMENT; WILLIAM GORE; TIM
CLARK; MATT STEVENS; and DOES
1-10 inclusive,

                              Defendants.

Case No.: 15-CV-854 JLS (MDD)

**ORDER: (1) GRANTING
DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' THIRD
AMENDED COMPLAINT; AND
(2) DISMISSING WITHOUT
PREJUDICE PLAINTIFFS' THIRD
AMENDED COMPLAINT**

(ECF No. 40)

        Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' Third
Amended Complaint.  ("MTD," ECF No. 40.)  Also before the Court is Plaintiffs'

Response in Opposition to, ("Opp'n," ECF No. 42), and Defendants' Reply in Support of, ("Reply," ECF No. 43), the Motion to Dismiss. Having considered the parties' arguments and the law, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Third Amended Complaint.

## BACKGROUND

Plaintiff Oceanside Organics is a "closed loop marijuana collective" operating in San Diego County, California. (Third Am. Compl. ("TAC"), ECF No. 40, ¶ 19.) The other plaintiffs are Oceanside Organics' eighteen individual members and a corporation formed to purchase the property upon which Oceanside Organics grows its medical marijuana. (*Id.* ¶¶ 3–18, 20.)

Plaintiffs agreed to contact local law enforcement to ensure the legality and compliance of their collective. (*Id.* ¶ 28.) In mid-July 2014, Plaintiffs' counsel contacted Defendant Tim Clark, a Deputy Sheriff with the San Diego County Sheriff's Department. (*Id.* ¶¶ 22, 29.) In the course of their correspondence, Plaintiffs' counsel provided to Defendant Clark "copies of all valid recommendations" for medical marijuana. (*Id.* ¶ 30.) Plaintiffs also "acquired state medical marijuana cards as requested by [D]eputy Clark." (*Id.*) According to Plaintiffs' counsel, "Deputy Clark repeatedly indicated to [Plaintiffs' counsel] that no legal action would be taken against the collective operation and that nobody at the cultivation site would be subject to arrest." (*Id.*) Defendant Clark "thanked attorney Callaway for the transparency and stated that the collective members were 'golden' and the cultivation operation was operating legally." (*Id.*)

Nevertheless, Plaintiffs allege "Deputy Clark conspired with [D]eputy Stevens[, another Deputy Sheriff with the San Diego County Sheriff's Department,] to have an illegal search warrant issued[,] which was based on a knowingly false affidavit." (*Id.* ¶¶ 23, 31.) Specifically, Defendants "falsely sw[ore] under oath that the marijuana was being cultivated illegally, despite the knowledge of both [Defendants] that the marijuana was being cultivated legally." (*Id.* ¶ 31.) On September 12, 2014, Plaintiffs' property was raided, (*id.* ¶¶ 29, 32), and Plaintiffs Shawn Smith and Kyle Sneller were arrested by

Defendants Clark and Stevens "without probable cause," (*id.* ¶¶ 14, 15, 29, 32, 50, 55). "At the time of the raid . . . , there were over 20 valid members of the collective and 31 medical marijuana plants on site." (*Id.* ¶ 32.)

As a result of Defendants' actions, Plaintiffs "suffered loss of illegally confiscated medical marijuana, intentional infliction of emotional distress, negligent infliction of emotional distress, false arrest, [and] violation of civil rights under the Constitution of the United . . . States and the State of California." (*Id.* ¶ 33.) Plaintiffs allege the County of San Diego is also liable because, amongst other reasons, it

> maintain[ed] a custom, policy and practice of violating the legal rights of valid medical marijuana patients in San Diego County by failing to properly train and supervise deputies . . . [and] allowed [the Sheriff's Department] to violate the guidelines of the Attorney General for the State of California regarding the security and non-diversion of marijuana grown for medical use in the State of California.

(*Id.* ¶ 25.) "As a proximate result of the custom, policy and practice of the County of San Diego an illegal warrant was issued, [and the] illegal raid . . . t[ook] place . . . ." (*Id.* ¶ 39.)

On April 17, 2015, Plaintiffs filed their original Complaint, setting forth six causes of action against Defendants Stevens and Clark or "all Individual Defendants" under both 42 U.S.C. § 1983 and California law. (*See* ECF No. 1 ¶¶ 40–64.) Plaintiffs also alleged a separate cause of action under section 1983 against Defendants County of San Diego and the San Diego County Sheriff's Department. (*See id.* ¶¶ 35–39.) The complaint also named Sheriff William Gore as a defendant, alleging only that he "is the chief policymaker and decision maker for the San Diego County Sheriff's Department on all issues regarding proper police training." (*Id.* ¶ 21.)

Defendants filed their first motion to dismiss on June 22, 2015, (ECF No. 5), and Plaintiffs filed their Request for Preliminary Injunction on June 25, 2015, (ECF No. 7). On November 30, 2015, the Court granted the County Defendants' motion to dsimiss and denied Plaintiffs' request for preliminary injunction. (ECF No. 22.) Plaintiffs have filed First and Second Amended Complaint (ECF Nos. 23, 32), both of which have been

dismissed in their entirety pursuant to Defendants' corresponding motions to dismiss. (ECF Nos. 31, 39.)  Plaintiffs filed their Third Amended Complaint on May 1, 2017 and Defendants filed the instant Motion to Dismiss on May 15, 2017.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.*  This review requires context-specific analysis involving

the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

### I.  First Cause of Action: Violation of Civil Rights (Section 1983) Against County Defendants (*Monell* Theory of Liability)

Plaintiffs' first cause of action claims violation of civil rights under section 1983 against Defendants County of San Diego and San Diego County Sheriff's Department, (collectively, the "County Defendants"). A government entity may not be held liable under section 1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978). To establish liability for governmental entities under *Monell*, a "plaintiff must  show: (1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (alterations in original) (internal quotation marks omitted) (quoting *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).

> [T]here are three ways to show a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (2) "by showing that the decision-making

official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision"; or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (quoting *Ulrich v. City of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)). "A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) (emphasis removed) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion)). "Previously, the Ninth Circuit held that a *Monell* claim was sufficient to withstand a motion to dismiss even if the claim was based on 'nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Warner v. Cnty. of San Diego*, No. 10CV1057 BTM BLM, 2011 WL 662993, at *3 (S.D. Cal. Feb. 14, 2011) (quoting *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988)). However, "since then, *Twombly* and *Iqbal* have made it clear that conclusory allegations that merely recite the elements of a claim are insufficient for 12(b)(6) purposes." *Id.*

Defendants move to dismiss the Third Amended Complaint because Plaintiffs fail to show an underlying constitutional deprivation and do not state any plausible *Monell* claim under any of the three ways to establish a policy or custom. (MTD 15–16.)[1] Plaintiffs argue that they have established the underlying constitutional deprivation and that they are "protected under the Fourth Amendment from illegal arrest and illegal siezure [sic] of property and from the custom, policy[,] and practice of a governmental entity that allows illegal police conduct." (Opp'n 5.) Plaintiffs again allege that *Monell* liability may be imposed for a failure to properly train and supervise deputies. (TAC ¶ 37.)

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

In particular, Plaintiffs allege that

> the County of San Diego, through the actions of the Board of Supervisors, the District Attorney's Office and the Sheriff's Department[,] maintain[s] a custom, policy and practice of violating the legal rights of valid medical marijuana patients in San Diego County by failing to properly train and supervise deputies regarding the obligation of the deputies to follow the statutory scheme created by the citizens of the State of California to allow cultivation of marijuana in California for medical use, by creating and allowing an environment in which deputies are encouraged and allowed to violate[] their oath to uphold the laws of the State of California and the Constitution of the United States.

(*Id.*) Plaintiffs add that Defendant "GORE is the chief policymaker and decision maker for the San Diego County Sheriff's Department on all issues regarding proper police training for the San Diego County Sheriff's Department." (*Id.* ¶ 21.) Plaintiffs allege "Defendant Clark admitted to attorney Callaway that it is the position of the San Diego Sheriff's Department that no cultivation of marijuana is legal in San Diego County." (*Id.* ¶ 30.)

There are three possible ways to demonstrate that the County of San Diego had a policy or custom. *See Villegas*, 541 F.3d at 964. The Court finds that at least some of Plaintiffs' allegations are non-conclusory, and thus sufficient at this stage to plausibly suggest the existence of a municipal custom. Specifically, Plaintiffs allege that the County of San Diego (1) fails "to properly train and supervise deputies regarding the obligation of the deputies to follow the statutory scheme created by the citizens of the State of California to allow cultivation of marijuana in California for medical use"; and (2) "creat[es] and allow[s] an environment in which deputies are encouraged and allowed to violate the guidelines of the Attorney General for the State of California regarding the security and non-diversion of marijuana grown for medical use in the State of California." Additionally, Plaintiffs add an allegation that Defendant Clark admitted that the Sheriff's Department had a policy that cultivation of marijuana is illegal in San Diego County. These allegations,

taken as true, are sufficient to give the County Defendants fair notice of the allegedly unlawful policies and practices in place. *See, e.g.*, *Johnson v. Shasta Cnty.*, 83 F. Supp. 3d 918, 931 (E.D. Cal. 2015) (finding similar allegations sufficient at the pleading stage).

Despite the above finding, Plaintiffs fail to adequately plead an underlying constitutional violation, *see infra* section III.A.  The underlying constitutional deprivation is a necessary element of a *Monell* claim.  *See Plumeau*, 130 F.3d at 438.  Thus, Plaintiffs' *Monell* liability must also fail.  Thus, the Court **GRANTS IN PART** Defendants' Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' first cause of action.

## II.  Second Cause of Action: Conspiracy to Violate Civil Rights (Section 1983) Against All Individual Defendants

With respect to their second cause of action for conspiracy to violate civil rights, Plaintiffs allege that "all individual named defendants herein acted in concert and conspired to intentionally have plaintiffs subjected to false arrest, illegal police conduct and illegal and false confiscation of legally grown medical marijuana." (TAC ¶ 41.)  Plaintiffs further allege that "the conduct of all individual defendants herein was motivated by evil motive and intent" (*id.* ¶ 43), and that "all individual defendants named herein exhibited reckless and callous indifference to the plaintiffs['] rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and the Constitution of the State of California," (*id.* ¶ 44).

The Ninth Circuit has summarized the elements of a civil conspiracy tort claim as follows:

> "A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage."  To prove a civil conspiracy, the plaintiff must show that the conspiring parties "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement."  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  A defendant's knowledge of and participation in a

> conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions. . . . As with [plaintiff's] other claims, his allegations of conspiracy must satisfy *Iqbal*.

*Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012) (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999)). Further, "[c]onspiracy is not itself a constitutional tort under § 1983. . . . It does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." *Id.* (citing *Cassettari v. Nev. Cnty.*, 824 F.2d 735, 739 (9th Cir. 1987) ("The insufficiency of these allegations to support a section 1983 violation precludes a conspiracy claim predicated upon the same allegations.")).

Defendants argue that Plaintiffs' conspiracy claim fails for two reasons: first, they fail to allege an underlying constitutional violation and second, they do not allege any facts showing that Defendants entered into "an agreement or 'meeting of the minds' to violate constitutional rights." (MTD 11–12 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989)).) In opposition, Plaintiffs argue that the underlying constitutional deprivation is cognizable and that Defendant Clark "conspired with defendant Stevens to lie to the magistrate that criminal activity was taking place." (Opp'n 5.)

The Court agrees with both of Defendants' arguments. First, the Court finds that because Plaintiffs' do not adequately plead an underlying constitutional violation, Plaintiffs' conspiracy claim must also fail. *See infra* section III.A.

Second, Plaintiffs' Third Amended Complaint alleges several factual allegations regarding Defendant Clark. For example, Defendant Clark was in contact with Plaintiffs' counsel about Plaintiffs' recommendations, Defendant Clark advised Plaintiffs he would meet with them, Defendant Clark visited the collective twice, and it was Defendant Clark who told Plaintiffs they were "golden." (TAC ¶¶ 29–30.) Conspicuously absent from these factual allegations is any detail concerning Defendant Stevens' actions or any other individual defendant. Instead, Plaintiffs allege, for example, "Deputy Clark conspired with

deputy Stevens to have an illegal search warrant issued," and [b]oth deputies Clark and Stevens knew that the collective cultivation operation was operating legally within the laws of the state of California." (*Id.* ¶ 31.) These allegations are "legal conclusions" that the Court need not credit. *Iqbal*, 556 U.S. at 677. These allegations simply rephrase the elements of a civil conspiracy claim, e.g., the Deputies conspired together and they had common knowledge. Such conclusory allegations "do not state a claim that is plausible on its face," *id.*, for civil conspiracy, regardless of whether there is an underlying constitutional violation. There are no factual allegations tying Defendant Stevens to Defendant Clark's conduct.

Consequently, the Court **GRANTS IN PART** Defendants' Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' second cause of action.

## III. Third Cause of Action: Violation of Civil Rights (Section 1983) Against Defendants Clark and Stevens

In their third cause of action, Plaintiffs allege that

> Defendants maliciously and without probable cause caused an illegal search warrant affidavit to be sworn against plaintiffs, executed the illegal warrant issued upon said false affidavit and illegally confiscated and converted plaintiffs' legally grown medical marijuana upon false evidence to be issued for plaintiffs in violation of plaintiffs' rights to due process under the Fourth and Fourteenth Amendments of the Constitution of the United States and the Constitution of the State of California.

(TAC ¶ 46.) Plaintiffs argue that they have properly stated a claim for judicial deception, which would form the basis for the underlying constitutional deprivation. (*See* Opp'n 6.)

To establish liability under section 1983, Plaintiffs must show (1) that they were deprived of a right secured by the United States Constitution or a federal law and (2) that the deprivation was effected "under color of state law." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)) (internal quotation marks omitted). The Court examines each element in turn.

### A. Underlying Constitutional Violation

Plaintiffs argue the underlying constitutional deprivation they suffered is based on their right to be free from illegal police conduct and illegal seizure of legally owned property under the Fourteenth, Fourth, and Fifth Amendments.[2]  (Opp'n 5.)

This Court previously found that Plaintiffs do not have either a procedural or substantive due process right under the Fourteenth Amendment.  (*See, e.g.*, ECF No. 22, at 13–14 ("Plaintiff[s] lack[] a federal Constitutional right to possess marijuana for medical purposes.").)  Plaintiffs do not provide any argument that would overcome the Court's previous holding—indeed, this holding is widely accepted amongst the district courts that have considered the argument.  (*See id.* at 14 (collecting authority).)  Therefore, the Court finds that Plaintiffs fail to state a claim for a due process right under the Fourteenth Amendment.

The Court turns to Plaintiffs' Fourth Amendment claims.  Plaintiffs allege there was a warrant, but contend that it was "an illegal search warrant issued which was based upon a knowingly false affidavit in support of the warrant." (TAC ¶ 31.)  Thus, Plaintiffs argue the underlying constitutional violation is judicial deception.  (Opp'n 6.)

The Fourth Amendment prohibits unreasonable searches and seizures.  U.S. Const. amend. IV.  Furthermore, "[t]he Fourth Amendment prohibits a search conducted pursuant to 'an ill-begotten or otherwise invalid warrant.'"  *Little v. Gore*, 148 F. Supp. 3d 936, 946 (S.D. Cal. 2015) (quoting *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011)).  To state a claim for judicial deception under section 1983, a plaintiff must "(1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the

---

[2] Additionally, Plaintiffs raise the Fifth Amendment as a potential basis for a constitutional violation in their Opposition, but have not included it in their Third Amended Complaint.  Therefore, the Court will not consider any possible Fifth Amendment issue.  *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Id.* (quoting *Bravo*, 665 F.3d at 1083). To prevail on the materiality element, Plaintiffs must show that a search warrant would not have issued had the affidavit contained the truthful or omitted information. *See Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997).

Relevant to the materiality element, California's Medical Marijuana Program Act ("MMPA") relieves certain qualified persons who associate "collectively or cooperatively to cultivate marijuana for medical purposes" from certain state criminal sanctions relating to marijuana. *See* Cal. Health & Safety Code § 11362.775(a). According to the "Guidelines for the Security and Non–Diversion of Marijuana Grown for Medical Use" issued by California's Attorney General on August 25, 2008:

> [A] properly organized and operated collective or cooperative that dispenses medical marijuana through a storefront may be lawful under California law, but . . . dispensaries that do not substantially comply with the guidelines [covering collectives and cooperatives] are likely operating outside the protections of [the CUA] and the MMP[A], and . . . the individuals operating such entities may be subject to arrest and criminal prosecution under California law. For example, dispensaries that merely require patients to complete a form summarily designating the business owner as their primary caregiver—and then offering marijuana in exchange for cash 'donations'—are likely unlawful.

*Demoura v. Ford*, No. 09-CV-1344-OWW, 2010 WL 5426850, at *5 (E.D. Cal. Dec. 27, 2010) (quoting *People v. Hochanadel*, 176 Cal. App. 4th 997, 1009 (Ct. App. 2009)). Thus, if a marijuana collective or cooperative is legally organized then "it and its operators might have a defense to arrest and prosecution under section 11362.775." *Hochanadel*, 176 Cal. App. 4th at 1018. On the other hand, an entity that fails to comply with the guidelines would likely be engaging in unlawful activity.

Here, Plaintiffs allege that "Defendants Clark and Stevens conspired to have defendant Stevens willfully and intentionally deceive the issuing magistrate by falsely swearing under oath that the marijuana was being cultivated illegally, despite the

knowledge of both defendants Clark and Stevens that the marijuana was being cultivated legally." (TAC ¶ 31.) Plaintiffs also allege that Defendants Clark and Stevens knew the following facts: (1) Plaintiffs' counsel was in contact with the deputies several months before the raid and arrests in an endeavor to ensure compliance with all applicable state laws, (*id.* ¶ 29); (2) Plaintiffs' counsel provided copies of all valid recommendations to Defendant Clark to allow him to confirm the validity of the recommendations, (*id.* ¶ 30); (3) Defendant Clark twice visited Plaintiffs' collective prior to September 2014, (*id.*); and (4) Defendant Clark stated that the collective members were "golden" and the cultivation operation was operating legally, (*id.*).

Defendants argue that Plaintiffs fail to demonstrate that their collective was in fact legally operated. (MTD 13 (quoting "Prior Order," ECF No. 39, at 13).) While Defendants concede that the Third Amended Complaint includes new allegations regarding the interactions between collective members and Defendant Clark, these allegations do not establish that the collective was legal, "only that Plaintiffs believed it to be so and hoped Defendant Clark would confirm the same." (*Id.* (quoting Prior Order 10).) Defendants also argue that Plaintiffs cannot establish materiality because "they fail to establish that the information that was presented in the affidavit could not, by itself, support a probable cause finding." (*Id.* at 14.)

Plaintiffs counter that at this stage in the proceeding they only need to allege the collective was operating legally rather than prove it was operating legally. (Opp'n 6.) Plaintiffs argue that "[i]t was an outright lie for defendant Stevens to swear under oath that criminal activity was taking place," but in the very next sentence they admit that "only defendants know what else was in the affidavit." (*Id.*) Plaintiffs argue that they have no burden to establish probable cause at the motion to dismiss stage; they need only allege probable cause. (*Id.*)

This Court previously held that Plaintiffs' "fail to allege that any statement was material to the issuing of the warrant." (Prior Order 13 (citing *Johnson*, 83 F. Supp. 3d at 926).) Alternatively, the Court also held that Plaintiffs failed to plausibly demonstrate that

"(1) Plaintiffs' collective was, in fact, legally operated, and (2) Defendants Clark and Stevens knew the same." (*Id.*) The Court begins its analysis of the Third Amended Complaint with these two holdings.

As before, the Court agrees with Defendants that Plaintiffs cannot establish materiality because they fail to establish that the information presented in the affidavit could not, by itself, support a probable cause finding. (MTD 14.) Plaintiffs' counterargument is that only Defendants know what was in the affidavit beyond the falsehood concerning the legality of the collective. (Opp'n 6.) This argument is not credible. California law provides that "if [a search] warrant has been executed, the documents and records shall be open to the public as a judicial record." Cal. Penal Code § 1534(a). Therefore, the search warrant documents would be available for Plaintiffs to include in the Third Amended Complaint had they sought it out. Without the affidavit and supporting material, the Court can only analyze the materiality element based on inference from Plaintiffs' factual allegations. The failure to include the search warrant and affidavit is not fatal, but Plaintiffs need factual allegations to establish the judicial deception elements.

Plaintiff's factual allegations plausibly suggest that (1) there was a search warrant; (2) there was a raid on the collective; and (3) at least one purpose of the raid was the marijuana related activities of the collective. At the time of the raid, California law provided some relief from criminal sanctions for marijuana collectives operating legally, *see* Cal. Health & Safety Code § 11362.775(a); *Hochanadel*, 176 Cal. App. 4th at 1018, thus, it is also plausible that a probable cause finding would need to address whether a collective was operating legally or illegally. If that were the end of the matter, Plaintiffs might have a plausible argument that Defendant Clark's statement or omission in the warrant affidavit was material to the probable cause supporting the search warrant.

However, as Defendants point out, Plaintiffs fail to address that the search warrant could have issued regardless of the legality of the collective. Plaintiffs argue that they need only *allege* the other information in the affidavit was not sufficient for probable cause.

(Opp'n 6 (emphasis added) (citing *Hervey v. Estes*, 65 F.3d 784, 787 (9th Cir. 1995)).)
Plaintiffs argue that the Court should not apply the summary judgment standard at this stage in the proceedings. The Court agrees that Plaintiffs do not need to meet the summary judgment standard for judicial deception. However, the authority Plaintiffs cite, *Hervey*, 65 F.3d 784, is pre-*Iqbal* and their Third Amended Complaint must meet the requirements of *Iqbal*, *see* 556 U.S. at 677 ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 570)); *see also Lacey*, 693 F.3d at 935 ("As with [the plaintiff's] other claims, his allegations of conspiracy must satisfy *Iqbal*."). The Third Amended Complaint lacks sufficient facts to indicate the search warrant resulted from false affidavits. There is no description of the affidavits' contents. *See Rocha v. Cnty. of Tulare*, No. CV F 13-0796 LJO GSA, 2013 WL 4046373, at *9 (E.D. Cal. Aug. 8, 2013) ("[T]he FAC lacks sufficient facts to indicate that the warrant arose from false affidavits. The FAC alleges conclusions that the affidavits were false because [the plaintiff] legally possessed marijuana."). The Court does not have the benefit of any documents in making its determination—without the warrant and the supporting affidavit (or factual allegations about the purportedly false affidavit) it cannot determine whether the information presented in the affidavit, regardless of the alleged falsehood, could by itself support a finding of probable cause.

The lack of materiality is sufficient grounds to grant Defendants' motion. Moreover, Plaintiffs have had several opportunities to amend their complaint and have repeatedly failed to state a claim. Normally, such a conclusion could lead to a dismissal with prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as . . . repeated failure to cure deficiencies by amendments previously allowed—the leave sought should, as the rules require, be 'freely given.'" (quoting Fed. R. Civ. P. 15(a)). However, in this instance the Court will detail why Plaintiffs' Third Amended Complaint, while still insufficient, will not be dismissed with prejudiced.

The Court distinguishes its prior orders where it found that Plaintiffs failed to plead

sufficient factual allegations that Defendants Clark and Stevens knew that Plaintiffs' collective was "legal." (Prior Order 10.) In their Third Amended Complaint, Plaintiffs added a new allegation that Defendant Clark told them there were "golden" and they were in compliance with state law. (TAC ¶ 30.) Defendants argue the new allegations do not plausibly establish the collective was legal, only that Plaintiffs believed it to be so and hoped Defendant Clark would confirm the same. Yet, the factual allegation, which the Court must accept as true at this stage, plausibly suggests that Defendant Clark believed the collective was legal. He allegedly said "that the collective members were 'golden' and the cultivation operation [was] operating legally." (*Id.*) Unlike the prior interactions alleged by Plaintiffs, which show (1) the intent of the collective to establish its legality and (2) Plaintiffs' belief that they were operating legally, this statement is of a different nature. This statement was made by Defendant Clark *to* the collective. Defendant Clark is no longer passively receiving information from Plaintiffs; the new allegation is Defendant Clark affirmatively making a statement to Plaintiff's counsel that Plaintiffs' were in compliance with state law. Defendant Clark's statement to Plaintiffs' counsel would plausibly lead them to believe that they had met all the requirements under California law for a marijuana collective to be operating legally.

This allegation speaks to Defendant Clark's conduct, but the ultimate conclusion from this allegation remains unclear. As stated previously, Plaintiffs do not plead sufficient facts that Defendant Clark's statement or omission was material to finding probable cause in the search warrant. Therefore, Plaintiffs do not plausibly state an underlying constitutional violation, but further factual allegations could plausibly state a claim. *See DeSoto*, 957 F.2d at 658.

### B. Acting Under Color of State Law

Plaintiffs allege that Defendants were acting under color of law. (*See* Opp'n 3–4.) "There is no 'rigid formula' for determining whether a state or local law official is acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006) (quoting *Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974)). "State

employment is generally sufficient to render the defendant a state actor," *West v. Atkins*, 487 U.S. 42, 48 (1988) (internal quotations and alterations omitted), but "whether a[n] . . . officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995).

The Ninth Circuit has emphasized there are "three critical requirements that must be satisfied" to determine whether an individual is acting under color of state law:

> First, the defendant's action must have been "performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties." *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000). Second, the officer's pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 839–40 (9th Cir. 1996) (finding no color of state law because the victim had not opened the door based on defendant's status as a police officer). Third, the challenged conduct must be "related in some meaningful way either to the officer's governmental status or to the performance of his duties." *Martinez*, 54 F.3d at 987.

*Anderson*, 451 F.3d at 1068–69.

Defendants argue that Plaintiffs fail to plead the alleged deprivations of their rights occurred while Defendant Clark was acting under color of state law and also fail to plead sufficient facts to support such a finding. (MTD 10.) Plaintiffs argue that there are sufficient factual allegations support a finding that Defendants acted under color of state law. They argue that "[p]rivate citizens cannot secure search warrants and arrest people." (Opp'n 4.)

Here, the Court considers the first two requirements together: (1) the defendant must have acted, purported, or pretended to act in the performance of his official duties, (2) with the purpose and effect of influencing the behavior of others. *See Anderson*, 451 F.3d at 1069. Plaintiffs allege that they contacted the San Diego County Sheriff's Department to inform them of their cultivation operation. (TAC ¶ 31.) Plaintiffs also allege that

Defendant Clark had several interactions with Plaintiffs and their counsel prior to the raid that occurred. Defendant Clark received Plaintiffs' recommendations to determine the legality of the collective and Clark visited the collective twice. (*Id.* ¶ 30.) These prior activities are generally the sort a law enforcement officer would undertake. Therefore, the Plaintiffs had reason to believe that further interactions with Defendant Clark would be in the performance of his official duties. The raid occurred on September 12, 2014. Plaintiffs allege virtually no facts beyond the briefest descriptions that (1) there was a raid; (2) a warrant was involved; (3) members were arrested; and (4) marijuana plants were destroyed or confiscated. (*Id.* ¶¶ 31–32.) However, those actions themselves are inherently coercive and intended to influence others, namely to comply with the commands of a law enforcement officer. Thus, when Defendant Clark and others executed the raid and required Plaintiffs to surrender marijuana plants and arrested Sneller and Smith, Defendants were acting, purporting, or pretending to act in performance of official duties and had the purpose and effect of influencing the behavior of the members of the collective.

The third element requires that Defendant Clark's conduct must be sufficiently related either to his governmental status or to the performance of his official duties. "This requirement cannot mean that an officer must have been acting within the scope of his authority in order for him to have been acting under color of state law. If that were true, no § 1983 suit could ever succeed, for the premise of a successful suit is that the officer acted illegally." *Anderson*, 451 F.3d at 1069. For example, in *Santiago v. Matkin*, No. 12-CV-1883-H (JMA), 2014 WL 12059025, at *3 (S.D. Cal. May 12, 2014), the district court found that defendants were acting under color of state law when they handcuffed and arrested the plaintiffs, the defendants identified themselves as law enforcement officers, and the defendants confiscated the plaintiffs' cell phones during the course of the altercation.

Here, Plaintiffs allege that there was a search warrant and raid on September 12, 2014 resulting in arrests of Plaintiffs Sneller and Smith and confiscation of medical marijuana plants. (TAC ¶¶ 31–32.) These actions—a search warrant, raid, arrest, and

18

confusion of property—comport with "actions . . . of the kind that [defendant] was hired to perform." *Vasquez v. Cnty. of Los Angeles*, CV 11-3849 PSG (PJWx), 2012 WL 12930526, at *4 (C.D. Cal. Oct. 3, 2012) (citing *Huffman v. Cnty. of Los Angeles*, 147 F.3d 1054, 1059 (9th Cir. 1998)). The Court finds that Plaintiffs have alleged facts that plausibly state Defendants were acting under color of state law. Yet, this finding only satisfies one element of section 1983.

In light of the foregoing, the Court **GRANTS IN PART** Defendants' Motion to Dismiss. However, because Plaintiffs have alleged new factual allegations that could, with further developed factual allegations, state a claim for relief, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' third cause of action.

### IV. Fourth and Sixth Causes of Action: False Arrest/Malicious Prosecution and Conversion (State Law)

In the fourth cause of action, Plaintiffs allege that "Defendants Clark and Stevens falsely, intentionally and maliciously arrested Plaintiffs Smith and Sneller without probable cause and despite the fact that defendants Clark and Stevens knew at all times that . . . plaintiffs were engaged in legal conduct under the laws of the State of California." (TAC ¶ 50.) Plaintiffs alleges false arrest and malicious prosecution. In the sixth cause of action, Plaintiffs allege that Defendants Clark and Stevens "illegally confiscated plaintiffs' legally owned property" and bring a conversion claim. (*Id.* ¶ 60.) Both causes of action sound in California law, not 42 U.S.C. § 1983.

Though not previously discussed in this Court's prior orders or in either parties' briefings, Plaintiffs' state law claims implicate the California Tort Claims Act and its presentation requirements. Generally, the Tort Claims Act provides that "[a] public entity may . . . be sued," but "no suit for money or damages may be brought against a public entity . . . until a written claim therefor has been presented to the public entity and has been

acted upon by the board, or has been deemed to have been rejected by the board."[3]  Cal. Gov. Code §§ 945, 945.4.  A claim relating to a cause of action for "injury to person or to personal property or growing crops," § 911.2, must be presented no later than six months after the accrual of the cause of action and leave to file a claim after the six month deadline must be sought within one year of the accrual of the action, § 911.4.  "The purpose of the claim procedure is said to be to give the public entity an opportunity for early investigation and thus to settle just claims before suit, to defend unjust claims, and to correct conditions or practices which gave rise to the claim."  *Briggs v. Lawrence*, 230 Cal. App. 3d 605, 612 (Ct. App. 1991) (citations omitted).

The presentation requirement extends to suits against public employees arising out of an act or omission within the scope of the employee's employment.  *See* Cal. Gov. Code § 950.2.  The California Tort Claims Act has "what amounts to a requirement that . . . one who sues a public employee on the basis of acts or omissions in the scope of the defendant's employment have filed a claim against the *public-entity employer* pursuant to the procedure for claims against public entities."  *Briggs*, 230 Cal. App. 3d at 613 (citations omitted). The presentation requirement includes suits brought against public employees sued in their individual capacity.  *See id.* ("'[I]f an action against the public entity were barred because a claim was not presented to the public entity . . . , the claimant could, nevertheless, bring an action against the employee involved and recover a judgment which the public entity ordinarily would then be required to pay' without having had the opportunities for early investigation, prompt settlement, adequate defense, and remedial action the claim procedure was intended to provide." (alterations in original) (citation omitted)).

A plaintiff must submit her claim to a public entity before bringing suit in court and "submission of a claim to a public entity pursuant to section 900 et seq. 'is a condition

---

[3] "There are exceptions to the government claim filing requirement.  The filing requirement does not apply to either non-pecuniary actions such as injunctive, specific, or declaratory relief, or causes of action based upon federal law.  *Canova v. Trs. of Imperial Irrigation Dist. Emp. Pension Plan,* 150 Cal. App. 4th 1487, 1493 (Ct. App. 2007).  Here, Plaintiffs seek monetary damages only and they do not present any other exception.  (*See* TAC 18.)

precedent to a tort action and the failure to present the claim bars the action.'" *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1240 (2004) (quoting *Phillips v. Desert Hospital Dist.*, 49 Cal. 3d 699, 708 (1989)). "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subject a complaint to general demurrer for failure to state a cause of action." *Id.* at 1240–41 (citations omitted).

Here, Plaintiffs' state law claims lie against Deputies Clark and Stevens, who they allege are Deputy Sheriffs of the San Diego County Sheriff's Department. (*See* TAC ¶ 1.) Plaintiffs are suing Defendants Clark and Stevens for their activities when they "were acting as deputies of the San Diego County Sheriff's Department." (Opp'n 4.) Thus, Plaintiffs seek to hold Defendants Clark and Stevens liable for actions or omissions in the course of their employment. They seek only monetary damages. (*See* TAC 18.) Plaintiffs' Third Amended Complaint contains no allegation that Plaintiffs have exhausted their state law remedies by timely filing a claim with the County of San Diego or similar entity as required by section 900 *et seq*.

Because this Order is the first instance in which the Court has addressed this issue, Plaintiffs may amend their complaint as to these two state law causes of action to demonstrate their compliance with California Government Code section 900 *et seq.* Accordingly, the Court **GRANTS IN PART** Defendants' MTD and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' fourth and sixth causes of action.

**V.    Fifth Cause of Action: False Arrest/Malicious Prosecution Under Section 1983 Against Defendants Clark and Stevens**

In the fifth cause of action, Plaintiffs allege that "Defendants Clark and Stevens falsely, intentionally and maliciously arrested plaintiffs Smith and Sneller without probable cause and recommended that false criminal charges be filed against them, despite the fact that defendants Clark and Stevens knew at all times that defendant Clark had been contacted by attorney Callaway and had assured attorney Callaway that plaintiffs were engaged in legal conduct under the laws of the State of California." (TAC ¶ 55.) Plaintiffs further allege that these "illegal arrest[s] . . . violat[ed] . . . plaintiffs' rights to due process

under the Fourth and Fourteenth Amendments." (*Id.* ¶ 56). Unlike Plaintiffs' fourth cause of action, which pleads the same theory under state law, this cause of action relies on section 1983.

### A. False Arrest

The Fourth Amendment requires that police officers have probable cause to support an arrest. *Luchtel v. Hagemann*, 623 F.3d 975, 979 (9th Cir. 2010). An arrest is supported by probable cause if, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." *Call v. Badgley*, 254 F. Supp. 3d 1051, 1066 (N.D. Cal. 2017) (alteration in original) (quoting *Luchtel*, 623 F.3d at 979). "The evidence need support 'only the probability, and not a prima facie showing, of criminal activity . . . .'" *Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)).

Plaintiffs allege very few details surrounding the arrests of Plaintiffs Sneller and Smith. For example, Plaintiffs allege that Defendants Clark and Stevens "falsely, intentionally, and maliciously arrested plaintiffs Smith and Sneller without probable cause . . . despite the fact that defendants . . . knew that plaintiffs were engaged in legal conduct under the laws of the State of California." (TAC ¶ 55.) There are no allegations about the circumstances of the raid and arrest, what Plaintiffs were told when they were arrested, or what charges were brought against Plaintiffs. Plaintiffs argue that such allegations are sufficient because "plaintiffs are not required to prove anything at this state [sic] of the proceedings" and Plaintiffs "were arrested by defendants Clark and Stevens pursuant to an illegal warrant, improperly obtained by the two defendants via falsehood to magistrate." (Opp'n 7.)

Defendants argue that Plaintiffs' cause of action is identical to the cause brought and dismissed in Plaintiffs' First Amended Complaint. (MTD 14.) They argue that because Plaintiffs have failed to show that Defendants Clark and Stevens violated Plaintiffs' civil rights by illegally obtaining and executing the search warrant" then a derivative false arrest

claim must also fail. (*Id.* (citing ECF No. 31, at 13–14; ECF No. 39, at 15–16).)

The Court begins by noting that Plaintiffs' factual allegations severely hamper analysis of this claim. Plaintiffs do not state what criminal charge they received and the Court can only infer based on the surrounding allegations. To begin, Plaintiffs allege there was no probable cause because Defendants knew Plaintiffs were engaged in legal conduct under the laws of the State of California. (*See* TAC ¶ 55.) Plaintiffs' allegations would allow the Court to reasonably infer that Plaintiffs Sneller and Smith were arrested for their marijuana-related activities or some cognizable crime related to the activities of the collective. However, neither the Compassionate Use Act ("CUA") nor the MMPA supply an absolute immunity from arrest.

In *People v. Mower*, the California Supreme Court held "section 11362.5(d) [of the CUA] does not grant any immunity from arrest." 28 Cal. 4th 457, 468–69 (2002). After *Mower* was decided, the California Legislature enacted the MMPA to clarify the scope of the CUA. *See People v. Kelly*, 47 Cal. 4th 1008, 1014 (2010). California courts have recognized that the enactment of the MMPA did not modify the *Mower* holding, quoted above. Thus, one California Court of Appeal has stated:

> [T]he status of [a] qualified [marijuana] patient does not confer an immunity from arrest. Law enforcement officers may arrest a qualified patient for marijuana offenses where they have probable cause, based on all of the surrounding facts including qualified patient status when they have reason to believe, for instance, that the arrestee does not possess marijuana for his personal medical purposes.

*Littlefield v. Cnty. of Humboldt*, 218 Cal. App. 4th 243, 252 (Ct. App. 2013) (citing, e.g., *People v. Strasburg*, 148 Cal. App. 4th 1052, 1058 (Ct. App. 2007)). Thus, there may be circumstances where a qualified marijuana patient possessing a legal recommendation from a physician may still be subject to arrest.

The foregoing principles apply to the case at bar. The gravamen of Plaintiffs' complaint is that the collective was operating legally and the raid, arrests, and confiscation of marijuana plants all derive from the original sin of the ill-gotten search warrant.

According to Plaintiffs, the false arrest is derivative from Defendants knowing "at all times that . . . plaintiffs were engaged in legal conduct." (TAC ¶ 55.) For example, Plaintiffs allege they all are "legal medical marijuana patients" (*see id.* ¶¶ 3–18), and that they provided their recommendations to Defendant Clark, (*id.* ¶ 30). Even accepting as true Plaintiff's argument that they are qualified patients, "the status of [a] qualified patient does not confer an immunity from arrest." *Littlefield*, 218 Cal. App. 4th at 252. "The CUA protects the possession of marijuana only in an amount reasonably related to the user's current medical needs." *Id.* (citing *Kelly*, 47 Cal. 4th at 1043). Defendants may have had probable cause to arrest Plaintiffs Sneller and Smith based on the totality of circumstances at the time of the raid; beyond the allegedly ill-gotten search warrant and beyond Defendants' alleged knowledge the collective was operating legally. The Court simply cannot assess Plaintiffs' false arrest claim due to lack of factual allegations about the events and circumstances of the arrest. Therefore, the Court finds that Plaintiffs fail to state a claim for relief as to false arrest.

### B. Malicious Prosecution

"In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right." *Flournoy v. Sacramento Cnty. Sheriff Dep't*, No. 11-cv-2844-KJM-EFB P, 2017 WL 4237868, at *28 (E.D. Cal. Sept. 25, 2017) (quoting *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (alteration and citation omitted)).

"Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy*, 368 F.3d at 1067 (citation omitted). "However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful

or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id.* (citations omitted).

Here, Plaintiffs allege only that "[c]riminal charges were rejected." (TAC ¶ 55.) There are no additional factual allegations about the criminal charges; there is nothing about the circumstances of the prosecution, at what stage in the proceedings the criminal charges were rejected, or even what charges Sneller and Smith received. Plaintiffs' allegation is vague and in no way explains any interaction between the prosecutor and any defendant(s) who improperly exerted pressure on the prosecutor. In prior orders, the Court admonished Plaintiffs to provide factual allegations sufficient to state a claim for relief that is plausible on its face. Plaintiffs have repeatedly failed to amend their complaint with sufficient factual allegations. However, the Court concluded above that Plaintiffs' judicial deception claim may be viable, with proper amendment, *see supra* section III.A, and Plaintiffs false arrest and malicious prosecution claims are derivative of the judicial deception claim. Thus, the dismissal of this cause of action will be without prejudice.

Consequently, the Court **GRANTS IN PART** Defendants' Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' sixth cause of action.

## VI. Seventh Cause of Action: Violation of Rights Under California Civil Code Section 52.1 Against Defendants Clark and Stevens (State Law Claim)

Plaintiffs allege that Defendants

> owed a duty to plaintiffs to not violate their rights under California Civil Code Section 52.1. Defendants breached their duty owed to plaintiffs by, inter alia, conspiring to lie to and mislead the issuing magistrate, by illegally destroying plaintiffs' property, illegally arresting plaintiffs Sneller and Smith and illegally recommending that false felony charges be brought against plaintiffs Sneller and Smith.

(TAC ¶ 63.) Plaintiffs additionally allege "[a]s a proximate result of defendants' conduct[,] plaintiffs' rights under the laws and Constitution of the State of California were violated and plaintiffs damaged thereby." (*Id.* ¶ 64.)

California Civil Code Section 52.1 ("Bane Act") "authorizes an action at law, a suit

in equity, or both, against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 331 (1998). "The word 'interferes' as used in [Section 52.1] means 'violates.'" *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007). "The essence" of a Section 52.1 claim is that the defendant, "by the *specified* improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the *right* to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Id.* (emphasis added).

In order to recover for a Bane Act violation, Plaintiffs must show that (1) Defendants interfered with their constitutional or statutory rights; and (2) that the interference was accompanied by actual or attempted threats, intimidation, or coercion. *Lawman v. City and Cnty. of San Francisco*, 159 F. Supp. 3d 1130, 1151 (N.D. Cal. 2016). Further, California courts have made clear that "a plaintiff in a search-and-seizure case must allege threats or coercion *beyond* the coercion inherent in a detention or search in order to recover under the Bane Act." *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015) (emphasis added) (citing, e.g., *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (Ct. App. 2015) ("[A] wrongful arrest or detention, without more, does not satisfy both elements of [the Bane Act].") (alterations in original)); *see Bender v. Cnty. of Los Angeles*, 217 Cal. App. 4th 968, 978 (Ct. App. 2013) ("[T]he Bane Act applies because there was a Fourth Amendment violation—an arrest without probable cause—*accompanied by* the beating and pepper spraying of an unresisting plaintiff, i.e., coercion that is in no way inherent in an arrest, either lawful or unlawful." (emphasis added)).

Here, Plaintiffs' Bane Act claim stems from the illegal search warrant and the resulting, derivative conduct. Assuming, arguendo, Plaintiffs had lawful possession of the marijuana, they fail to plead sufficient facts to support a plausible claim that Defendants conduct went beyond the coercion inherent in a detention or search. *See id.* Plaintiffs' Bane Act claims are based entirely on an unconstitutional search, arrest, and, confiscation

of potential contraband, and prosecution—they allege no further conduct that goes beyond these acts. *See Allen v. Cnty. of Lake*, No. 14-cv-03934-THE, 2017 WL 363209, at *4 (N.D. Cal. Jan. 25, 2017) ("[B]ecause Plaintiffs base their Bane Act claims entirely on the unconstitutional search and seizure violations they have failed to provide evidence of independent threats, intimidation, or coercion that give rise to a Bane Act claim against any Defendant." (citation omitted)). The lack of factual allegations concerning threats, intimidation, or coercion—beyond the coercion inherent in search, seizure, and detention—means that Plaintiffs' Bane Act claim must fail.

Therefore, the Court **GRANTS** Defendants' MTD and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' seventh cause of action.

### CONCLUSION

In light of the above, the Court **GRANTS** Defendants' Motion to Dismiss. (ECF No. 40.) The Court has repeatedly admonished Plaintiffs' to adequately re-plead their causes of action with sufficient factual allegation to state a claim for relief. Plaintiffs have had three opportunities to do so and each iteration yield the bare minimum of additional factual allegations. However, because Plaintiffs amended their TAC to include factual allegations that could, with additional detail, state a claim for relief, *see supra* section III.A, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Third Amended Complaint. Plaintiffs **SHALL FILE** an amended complaint, if any, <u>on or before twenty-one (21) days from the date on which this Order is electronically docketed</u>. *Failure to file an amended complaint on this date may result in a dismissal of this case with prejudice.*

**IT IS SO ORDERED.**

Dated: March 5, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge