UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCEANSIDE ORGANICS; OCEANSIDE FARM TO TABLE, INC.; ALAN SHELTON; JUSTINE SHELTON; RON MIROLLA; LISA RIGG; MICHAEL WINKLEMAN; SARAH DYAL; ANTHONY CARBONNE; RICHARD DAVIS; DAVID SNYDER; DUANE LEWIS; SANDRA LEWIS; WAYNE LARSON; SHAWN SMITH; KYLE SNELLER; BUCK HUTCHERSON; LOGAN PIERCE; BROOK BISHOP; RON BOCIAN, | Case No.: 15-CV-854 JLS (MDD) **ORDER: (1) GRANTING DEFENDANTS' MOTION TO DISMISS; AND (2) DISMISSING WITH PREJUDICE PLAINTIFFS' FOURTH AMENDED COMPLAINT** (ECF No. 47) |
| Plaintiffs, | |
| v. | |
| COUNTY OF SAN DIEGO, SAN DIEGO COUNTY SHERIFF'S DEPARTMENT; WILLIAM GORE; TIM CLARK; MATT STEVENS; and DOES 1-10 inclusive, | |
| Defendants. | |

Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Complaint. ("MTD," ECF No. 47.) Also before the Court is Plaintiffs'

Response in Opposition to, ("Opp'n," ECF No. 48), and Defendants' Reply in Support of, ("Reply," ECF No. 50), the Motion to Dismiss. Having considered the parties' arguments and the law, the Court rules as follows.

## BACKGROUND

Plaintiff Oceanside Organics is a "not for profit closed loop marijuana collective" operating in San Diego County, California. (Fourth Am. Compl. ("FAC"), ECF No. 46, ¶ 19.) The other plaintiffs are Oceanside Organics' sixteen individual members and a corporation formed to purchase the property upon which Oceanside Organics grows its medical marijuana. (*Id.* ¶¶ 3–18, 20.)

Plaintiffs agreed to contact local law enforcement to ensure the legality and compliance of their collective. (*Id.* ¶ 28.) In mid-July 2014, Plaintiffs' counsel, Daniel Callaway, contacted Defendant Tim Clark, a Deputy Sheriff with the San Diego County Sheriff's Department. (*Id.* ¶¶ 22, 29.) In the course of their correspondence, Plaintiffs' counsel provided to Defendant Clark "copies of all valid recommendations" for medical marijuana. (*Id.* ¶ 31.) Defendant Clark told Plaintiffs' counsel that the Sheriff's Department considered medical marijuana recommendations invalid and only county-issued identification cards to be valid. (*Id.* ¶ 29.) In response, some Plaintiffs also "acquired state medical marijuana cards as requested by [D]eputy Clark." (*Id.*) According to Plaintiffs' counsel, "Deputy Clark repeatedly indicated to [Plaintiffs' counsel] that no legal action would be taken against the collective operation and that nobody at the cultivation site would be subject to arrest." (*Id.*) Defendant Clark "thanked attorney Callaway for the transparency and stated that the collective members were 'golden' and the cultivation operation was operating legally." (*Id.*)

Defendant Clark also communicated via text message with Plaintiffs' counsel. At some point, Clark stated via text that no one at the cultivation site would be subject to arrest. (*Id.*) He also confirmed to Plaintiffs' attorney that the collective was allowed six mature marijuana plants per valid state identification card. (*Id.*)

///

Despite being told they were "golden," Plaintiffs allege "Deputy Clark conspired with [D]eputy Stevens to have an illegal search warrant issued[,] which was based on a knowingly false affidavit." (*Id.* ¶¶ 23, 31.) According to Plaintiffs, the affidavit was false because both deputies knew that the collective cultivation operation was operating legally. (*Id.* ¶ 31.) On September 12, 2014, the Sheriff's Department raided Plaintiffs' property, (*id.* ¶ 29), and Defendants Clark and Stevens Plaintiffs arrested Shawn Smith and Kyle Sneller "without probable cause . . . for felony cultivation of marijuana," (*id.* ¶ 50). The sheriffs also confiscated Plaintiffs' marijuana plants. (*Id.* ¶ 59.) "At the time of the raid . . . , there were over 20 valid members of the collective and 31 medical marijuana plants on site." (*Id.* ¶ 32.) Plaintiffs allege that after the raid occurred, Defendant Clark admitted to Plaintiffs' attorney and Plaintiffs Sneller and Smith that the Department took the action because "it is the position of the San Diego Sheriff's Department that no cultivation of marijuana is legal in San Diego County." (*Id.* ¶ 29.)

As a result of Defendants' actions, Plaintiffs "suffered loss of illegally confiscated medical marijuana, intentional infliction of emotional distress, negligent infliction of emotional distress, false arrest, [and] violation of civil rights under the Constitution of the United States and the State of California." (*Id.* ¶ 33.) Plaintiffs allege Defendant County of San Diego is also liable because, among other reasons, it

> maintain[ed] a custom, policy and practice of violating the legal rights of valid medical marijuana patients in San Diego County by failing to properly train and supervise deputies . . . [and] allowed [the Sheriff's Department] to violate the guidelines of the Attorney General for the State of California regarding the security and non-diversion of marijuana grown for medical use in the State of California.

(*Id.* ¶ 25.) "As a proximate result of the custom, policy and practice of the County of San Diego an illegal warrant was issued, [and the] illegal raid . . . t[ook] place." (*Id.* ¶ 39.)

On April 17, 2015, Plaintiffs filed their original Complaint, setting forth causes of action under 42 U.S.C. § 1983 and California law. (*See* ECF No. 1.) Plaintiffs' operative complaint has been dismissed without prejudice four times. Plaintiffs filed their Fourth

Amended Complaint on March 25, 2018, and Defendants filed the instant Motion to Dismiss on April 9, 2018.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

# ANALYSIS

Plaintiffs bring seven causes of action; four are federal causes of action arising under 42 U.S.C. § 1983—a *Monell* claim against the County, a conspiracy to violate civil rights claim, a judicial deception claim, and a false arrest and malicious prosecution claim. The remaining claims arise under California law—a false arrest and malicious prosecution claim, a conversion claim, and a violation of California Civil Code § 52.1. To establish liability under section 1983, Plaintiffs must show (1) that they were deprived of a right secured by the United States Constitution or a federal law and (2) that the deprivation was effected "under color of state law." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)) (internal quotation marks omitted). The dispositive issue in this Order is whether Plaintiffs have alleged sufficient factual matter to state a claim for a constitutional deprivation. As will be seen, a constitutional deprivation is the necessary predicate for each of Plaintiffs' federal causes of action.

Accordingly, the Court will discuss Plaintiffs' causes of action in a different order than presented in the Fourth Amended Complaint. The Court begins with Plaintiffs' causes of action that deal directly with alleged constitutional violations: the third claim for judicial deception and the fifth claim for § 1983 false arrest and malicious prosecution claim. Then, the Court discusses Plaintiffs' *Monell* claim and conspiracy claim—both of which require a predicate constitutional violation. Finally, the Court addresses Plaintiffs' pendent state law claims.

## I. Third Claim: Judicial Deception Under § 1983

In their third cause of action, Plaintiffs allege that:

> Defendants maliciously and without probable cause caused an
> illegal search warrant affidavit to be sworn against plaintiffs,

5

executed the illegal warrant issued upon said false affidavit and illegally confiscated and converted plaintiffs' legally grown medical marijuana upon false evidence to be issued for plaintiffs in violation of plaintiffs' rights to due process under the Fourth and Fourteenth Amendments of the Constitution of the United States and the Constitution of the State of California.

(FAC ¶ 45.)  Plaintiffs alleged constitutional deprivation is for judicial deception with respect to the search warrant.  They allege there was a search warrant, but contend that it was "an illegal search warrant issued which was based upon a knowingly false affidavit in support of the warrant."  (*Id.* ¶ 31.)

The Fourth Amendment prohibits unreasonable searches and seizures.  U.S. Const. amend. IV.  Furthermore, "[t]he Fourth Amendment prohibits a search conducted pursuant to 'an ill-begotten or otherwise invalid warrant,'" which is known as a claim for judicial deception.  *Little v. Gore*, 148 F. Supp. 3d 936, 946 (S.D. Cal. 2015) (quoting *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011)).  To state a claim for judicial deception under section 1983, a plaintiff must "(1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth."  *Id.* (quoting *Bravo*, 665 F.3d at 1083).  To prevail on the materiality element, Plaintiffs must show that a search warrant would not have issued had the affidavit contained the truthful or omitted information.  *See Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997).

### A. *Parties' Arguments*

Here, Defendants advance four broad arguments as to why Plaintiffs fail to state a claim.  First, Defendants' broadly contend that Plaintiffs do not have a federally protected right in marijuana cultivation or possession because both are federal crimes under the Controlled Substances Act.  (MTD 10 (citing United States v. Oakland Buyers' Co-op, 532 U.S. 483, 491 (2001)).)  Second, along those same lines, Defendants argue that there is no federal protection for trafficking marijuana.  (Id. at 16.)

6

This Court previously found that Plaintiffs do not have either a procedural or substantive due process right under the Fourteenth Amendment to possess marijuana. (See ECF No. 22, at 13–14 ("Plaintiff[s] lack[] a federal Constitutional right to possess marijuana for medical purposes.").) Plaintiffs' Fourth Amended Complaint does not assert that they have a substantive due process right in marijuana. Instead, Plaintiffs argue that their Fourth Amendment right against unreasonable searches and seizures was violated, which does not implicate a substantive due process right in marijuana. (See Opp'n 3 ("The gravamen of plaintiffs' action is the right to be free from illegal police conduct.").) Given the Court's prior holding and Plaintiffs' decision not to assert a due process right in marijuana, Defendants' arguments that marijuana lacks federal protection is not responsive to the operative complaint. See also Demoura v. Ford, No. 09-CV-1344-OWW, 2010 WL 5426850, at *7 (E.D. Cal. Dec. 27, 2010) ("Defendants misapprehend the basic concepts underlying the Fourth Amendment, which tests the lawfulness of a search and seizure under both state and federal law. Although federal law does not recognize the California scheme for medical marijuana coops, the search and seizure were conducted under state law, not federal criminal law." (citation omitted)). Thus, Defendants' arguments about federal rights are inapposite.

Turning to the remaining arguments, Defendants maintain that at the time of the raid, California law did not confer a legally protected right to cultivate or possess marijuana. (MTD 13.)[1] Instead, California law conferred an affirmative defense from state criminal prosecutions, but did not provide immunity from arrest if an officer has probable cause for that arrest. (*Id.* (citing *People v. Mower*, 28 Cal. 4th 457, 474 (2002)).) Defendants cite *People v. Kelly*, 47 Cal. 4th 1008, 1013 (2010), for the proposition that California law does not specify the maximum quantity of marijuana a user may possess or cultivate for medical purposes. (MTD 14.) Defendants point out, however, that a marijuana patient may assert

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

a defense that he or she possessed any amount of marijuana reasonably related to meet his or her current medical needs. (*Id.*)

Plaintiffs counter that, had the magistrate judge known the following facts, no search warrant would have issued. (Opp'n 8.) First, Plaintiffs point out that they provided Defendant Clark with all their marijuana recommendations two months prior to the affidavit. Second, that Defendant Clark was in constant contact with Plaintiffs' counsel; third, that Clark had advised Plaintiffs' counsel that the collective was in full compliance with state law. (*Id.*) Fourth, Defendant Clark inspected the collective's location twice and took no action. (*Id.*) Plaintiffs contend that had the magistrate judge known those facts it would be "inconceivable that the magistrate would have issued the search warrant." (*Id.*)

In support of their claim, Plaintiffs attach two exhibits to their Opposition brief. The first is what appears to be text message exchanges between Defendant Clark and Mr. Callaway. (Ex. A, ECF No. 48-2.) The second is an excerpt from Defendant Stevens' affidavit supporting the search warrant. (Ex. B, ECF No. 48-3.) The latter describes the location to be searched in detail (i.e., Plaintiffs' property). (*Id.* at 2.) Defendant Stevens also attested to a statement of probable cause. Specifically, he conducted an aerial reconnaissance over Plaintiffs' property. (*Id.* at 3.) Defendants Stevens described several buildings and structures on the property, including a "greenhouse type structure and a small tent." (*Id.*) He concluded that, "[b]ased on the size of the location, the observations made and the affiant's training and experience, [he] believe[d] there could be in excess of 100 growing marijuana plants." (*Id.*)

Defendants maintain that courts cannot look beyond a complaint to a party's moving papers when ruling on a motion to dismiss. (Reply 4 (citing *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)).) Defendants argue that even if the Court were to consider the exhibits attached to Plaintiff's Opposition brief, the exhibits are insufficient to support a judicial deception claim. First, Defendants point out that Plaintiffs do not disclose the actual search warrant or Defendant Clark's affidavit and only include a portion of Defendant Stevens' affidavit. (*Id.*) Second, the excerpted portion of Defendant

Stevens' affidavit fails to demonstrate that he deliberately or recklessly made false statements in his affidavits. (*Id.* (citing *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978)).)

### B. Court's Analysis

#### 1. Plaintiffs' Exhibits

The Court begins with the threshold matter of Plaintiffs' exhibits. Plaintiffs did not include Defendants Stevens' affidavit or any factual allegations concerning the affidavit in their Fourth Amended Complaint. In its prior order, the Court explicitly stated that the failure to include an affidavit, search warrant, or factual allegations concerning an affidavit or search warrant was dispositive in determining Plaintiffs' failure to state a claim for a constitutional violation. ("Prior Order," ECF No. 45, at 14–15.) The Court also cited authority for the proposition that, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving paper, such as a memorandum in opposition to a defendant's motion to dismiss." (*Id.* at 11 n.2 (citing *Schneider*, 151 F.3d at 1197 n.1).)

Despite these clear warnings, Plaintiffs took a different approach. Plaintiffs decided to attach exhibits in their Opposition brief instead of to the Fourth Amended Complaint, contrary to the Federal Rules and Ninth Circuit precedent. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a *pleading* is a part of the pleading for all purposes.") (emphasis added); *Schneider*, 151 F.3d at 1197 n.1. Accordingly, the Court will not consider Plaintiffs' exhibits in adjudicating the motion to dismiss. Even if the Court were to consider Plaintiffs' exhibits, they would not alter the Court's conclusion, as will be seen.

#### 2. Whether the Warrant Affidavit Contained Misrepresentations or Omissions Material to the Finding of Probable Cause

In 1996, California's electorate passed Proposition 215 and enacted the Compassionate Use Act ("CUA"), which generally exempted medical marijuana patients and their caregivers from laws criminalizing possession and cultivation of marijuana. *See*

Cal. Health & Safety Code § 11362.5; *Kelly*, 47 Cal. 4th at 1012–13. In *People v. Mower*, the California Supreme Court held "section 11362.5(d) [of the CUA] does not grant any immunity from arrest." 28 Cal. 4th at 468–69. In 2003, the California Legislature enacted the Medical Marijuana Program Act ("MMPA") to clarify the scope of the CUA. *See Kelly*, 47 Cal. 4th at 1014. "At the heart of the MMP[A] is a voluntary 'identification card' scheme that, unlike the CUA—which . . . provides only an *affirmative defense* to a charge of possession or cultivation—*provides protection against arrest* for those and related crimes." *Id.* A person who suffers from a serious medical condition or a primary caregiver may receive an identification card that "can be shown to a law enforcement officer who otherwise might arrest the program participant or his or her primary caregiver." *Id.* (citing Cal. Health & Safety § 11362.71(e)).

California courts have recognized that the enactment of the MMPA did not modify the *Mower* holding, i.e., that the CUA does not grant immunity from arrest for patients with only a marijuana recommendation. Thus, as one California Court of Appeal has stated:

> [T]he status of [a] qualified [marijuana] patient does not confer an immunity from arrest. Law enforcement officers may arrest a qualified patient for marijuana offenses where they have probable cause, based on all of the surrounding facts including qualified patient status when they have reason to believe, for instance, that the arrestee does not possess marijuana for his personal medical purposes.

*Littlefield v. Cnty. of Humboldt*, 218 Cal. App. 4th 243, 252 (2013) (citing, e.g., *People v. Strasburg*, 148 Cal. App. 4th 1052, 1058 (2007)). The Attorney General's 2008 Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use (hereinafter "AG Guidelines") direct police officers to "use their sound professional judgment to assess the validity of the person's medical-use claim" based on the totality of the circumstances, including the quantity of the marijuana present. AG Guidelines III.B.5.[2] In sum, there

---

[2] The Attorney General's Guidelines are available at: https://www.placer.ca.gov/upload/bos/cob/documents/sumarchv/2010Archive/100406A/bosd_100406_032_p26_p37.pdf (last visited Sept. 17, 2018). The Court may judicially notice publicly available information from government websites. *See*

may be circumstances where a qualified marijuana patient possessing a legal recommendation from a physician may still be subject to arrest.

At the same time, if a medical marijuana patient holds a valid identification card then he or she will have immunity from arrest "unless there is probable cause to believe that the information contained in the card is false or falsified, the card has been obtained by means of fraud, or the person is otherwise in violation of the provisions of this article." Cal. Health & Safety Code § 11362.71(e); *see also City of Riverside v. Inland Empire Patients Health & Wellness Ctr., Inc.*, 56 Cal. 4th 729, 754 n.7 (2013) ("The MMP[A] . . . . prohibits a local law enforcement agency or officer from refusing to accept an identification card as protection against arrest for the possession, transportation, delivery, or cultivation of specified amounts of medical marijuana, except upon 'reasonable cause to believe that the information contained in the card is false or fraudulent, or the card is being used fraudulently.'") (citation omitted).

Also relevant here is MMPA's provisions that relieve certain qualified persons who associate "collectively or cooperatively to cultivate marijuana for medical purposes" from certain state criminal sanctions relating to marijuana. Cal. Health & Safety Code § 11362.775(a). If a marijuana collective or cooperative is legally organized, then "it and its operators might have a defense to arrest and prosecution under section 11362.775." *People v. Hochanadel*, 176 Cal. App. 4th 997, 1018 (2009). However, if a law enforcement officer has probable cause to believe that a marijuana collective is operating unlawfully, then a search warrant may still issue. *See id.*

Finally, California Health & Safety Code § 11362.77 limits the number of marijuana plants an individual can legally own. At the time of the raid in 2014, the statute provided that "[a] qualified patient or primary caregiver may possess no more than eight ounces of dried marijuana per qualified patient. In addition, a qualified patient or caregiver may also

---

*Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (citing *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08–CV–1166–IEG, 2009 WL 6597891, *1 (S.D. Cal. Dec. 23, 2009); *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010)).

maintain no more than six mature or 12 immature marijuana plants per qualified patient." Cal. Health & Safety Code § 11362.77(a). The section provided an exception where "a qualified patient or primary caregiver has a doctor's recommendation that this quantity does not meet the qualified patient's medical needs, the qualified patient or primary caregiver may possess an amount of marijuana consistent with the patient's needs." Cal. Health & Safety Code § 11362.77(b). Finally, section 11362.77 applies to "[a] qualified patient or a person holding a valid identification card, or the designated primary caregiver." Cal. Health & Safety Code § 11362.77(e).

The dispositive issue with regard to judicial deception is probable cause, specifically, whether Defendants had probable cause that Plaintiffs were violating some aspect of the medical marijuana framework described above. If Defendants had sufficient probable cause, beyond any false or omitted material, then a warrant would have properly issued and Plaintiffs' judicial deception argument fails. "The existence of the Compassionate Use Act [] and the Medical Marijuana Program Act [] do not change the probable cause analysis." *United States v. Carpenter*, 461 Fed. App'x 539, 540 (9th Cir. 2011) (unpublished opinion). As discussed, to state a claim for judicial deception under section 1983, a plaintiff must "(1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Little*, 148 F. Supp. 3d at 946 (quoting *Bravo*, 665 F.3d at 1083).

Under California law at the time, the maximum amount per recommendation and identification card was (and is) six mature plants.[3] Cal. Health & Safety Code §§ 11362.77(a), (e). Here, Plaintiffs allege there were twenty members of the collective. (FAC ¶ 32.) Defendant Clark communicated to Plaintiffs that that maximum amount

_____

[3] The statute allows for a departure from the six plant maximum, but Plaintiffs have not alleged that their recommendations, individually or collectively, allowed them to exceed section 11362.77's baseline.

allowed was six plants per state-issued identification card. (*Id.* ¶ 29.) Plaintiffs agree that they were allowed six plants.[4] (*Id.*) Thus, twenty members would be allowed 120 marijuana plants; Plaintiffs agree with this total. (*Id.* ¶ 32.) The corollary observation is that if Defendants had probable cause to believe that Plaintiffs had more than 120 plants, then a warrant could issue. Put differently, had Defendants told the magistrate all the facts Plaintiffs describe, as well as Defendants' belief that Plaintiffs had more than the statutory maximum, then the omission of the information was not material to the warrant. The warrant could have issued regardless of the omitted information.[5]

One final issue remains. Plaintiffs allege that at the time of the raid only thirty-one marijuana plants were at the collective's location. (FAC ¶ 32.) The disparity between the thirty-one plants and the 120 plants necessary to establish probable cause makes this a closer question. However, Plaintiffs have the burden to demonstrate that Defendant Clark's misrepresentations or omissions were intentional or reckless. Generally, this requires more than mere negligence. *See United States v. Smith*, 588 F.2d 737, 740 (9th Cir. 1978) ("Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause."). Yet

---

[4] Plaintiffs allege, for the first time, that "[s]ome patient/members acquired state medical marijuana cards as requested by deputy Clark." (FAC ¶ 29.) Plaintiffs do not elaborate how many members had identification cards.

[5] Even if the Court were to consider the portion of the affidavit submitted with Plaintiffs' Opposition brief, the same conclusion results. Defendant Stevens described probable cause as follows:

> On 9/5/2014, your affiant was conducting an aerial reconnaissance flight in support of marijuana eradication operations when I discovered an illegal marijuana cultivation operation. . . . There are several buildings and structures on the property, including greenhouse type structure and small tent. I observed the greenhouse type structure to contain what I believe to be marijuana plants. . . . Based upon the size of the location, the observations made and the affiant's training and experience, I believe there could be in excess of 100 growing marijuana plants.

(Opp'n, Ex. B, at 3.) Thus, Defendant Stevens could have believed that Plaintiffs possessed an excess of their maximum marijuana plant amount. Even if he were mistaken, the standard to demonstrate judicial deception is whether any misrepresentations or omissions were made intentionally or with reckless disregard for the truth.

Plaintiffs' complaint contains virtually no factual matter that would allow the Court to infer that Defendant Clark knew (or was willfully blind to the fact that) there were only thirty-one plants. At most, Plaintiffs allege Defendant Clark visited the collective, but any details beyond that are unknown. Thus, Plaintiffs do not plausibly establish that Defendant Clark's misrepresentations or omissions were intentional or reckless.

The Court considers the Supreme Court's guidance that "[w]here the alleged . . . violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *United States v. Leon*, 468 U.S. 897, 922–23 (1984)). "It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.* at 547 (citing *Leon*, 468 U.S. at 921; *Malley v. Briggs*, 475 U.S. 333, 346 n.9 (1986)). The magistrate in this case did so and Plaintiffs' allegations do not demonstrate Defendants intentionally or recklessly misled or omitted the relevant material before that magistrate.

In sum, the Court finds that Plaintiffs have not alleged sufficient factual matter to state a plausible Fourth Amendment judicial deception violation. Accordingly, the Court does not reach whether Defendants were acting under color of state law. In light of the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiffs' third cause of action.

## II.    Fifth Claim: False Arrest/Malicious Prosecution Under § 1983

In the fifth cause of action, Plaintiffs allege that "Defendants Clark and Stevens falsely, intentionally and maliciously arrested plaintiffs Smith and Sneller without probable cause and recommended that false criminal charges be filed against them despite the fact that defendants Clark and Stevens knew at all times that plaintiffs were engaged in legal conduct under the laws of the State of California." (FAC ¶ 54.) Sneller and Smith were arrested for "felony cultivation of marijuana under the laws of the State of California and submitted a false police report to the San Diego County District Attorney's office

requesting plaintiffs be criminally charged for said offense." (*Id.* ¶ 50.) Plaintiffs further allege that these "illegal arrest[s] . . . violat[ed] . . . plaintiffs' rights to due process under the Fourth and Fourteenth Amendments." (*Id.* ¶ 56).

### A. False Arrest

The Fourth Amendment requires that police officers have probable cause to support an arrest. *Luchtel v. Hagemann*, 623 F.3d 975, 979 (9th Cir. 2010). An arrest is supported by probable cause if, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." *Call v. Badgley*, 254 F. Supp. 3d 1051, 1066 (N.D. Cal. 2017) (alteration in original) (quoting *Luchtel*, 623 F.3d at 979). "The evidence need support 'only the probability, and not a prima facie showing, of criminal activity." *Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)).

Defendants argue that a plaintiff must allege that the state actor intended to subject a person to a denial of a specific federal constitutional right. (MTD 28 (citing *Poppell v. City of San Diego*, 149 F.3d 951, 961 (9th Cir. 1998)).) They then argue that because federal law prohibits marijuana cultivation and possession, a prosecution cannot have been conducted with the intent to deprive a person of a federally protected right to cultivate or possess marijuana. (*Id.*)

Plaintiffs contend that Defendants knew Smith and Sneller were not in violation of any law and that Defendants illegally arrested them. (Opp'n 9.) Plaintiffs then state that the district attorney rejected criminal charges and that the false arrest claims are properly stated. (*See id.*) Defendants' reply brief does not directly address the false arrest claim.

Defendants misapprehend Plaintiffs' claim. Defendants argue that Plaintiffs do not have a federally protected right in marijuana cultivation or possession and therefore cannot be subject to a false arrest claim. Plaintiffs' false arrest claim does not derive from a right to possess or cultivate marijuana but from the Fourth Amendment's guarantee to be free from arrest without probable cause of a crime.

///

Plaintiffs allege that Smith and Sneller were arrested for felony cultivation of marijuana. (FAC ¶ 50.) At the time of arrest, California Health & Safety Code § 11358 criminalized any cultivation, harvesting, drying, or possession of cannabis plants. *See* Cal. Health & Safety Code § 11358 (2014). At the time of the raid, the CUA did not grant immunity from arrest; it was an affirmative defense Plaintiffs could assert at trial. *See Call*, 254 F. Supp. 3d at 1067 (citing *Kelly*, 47 Cal. 4th at 1013). "So long as the authorities have probable cause to believe that possession or cultivation has occurred, law enforcement officers may arrest a person for either crime regardless of the arrestee's having a physician's recommendation or approval." *Kelly*, 47 Cal. 4th at 1013 (citing *Mower*, 28 Cal. 4th at 467–69). If a marijuana user has a state-issued identification card, then he or she may have immunity from arrest if the card is presented to a law enforcement officer. Yet a law enforcement officer need not accept an identification card if he has reasonable cause to believe it is fraudulent or is being used fraudulently. *See Call*, 254 F. Supp. 3d at 1067 (citing *Inland Empire*, 56 Cal. 4th at 754 n.7).

Plaintiffs do not allege that Smith and Sneller had valid marijuana identification cards and consequently, Defendants could arrest Smith and Sneller as long as the deputy sheriffs had probable cause of marijuana cultivation. Plaintiffs argue that Defendants' misrepresentations to the magistrate caused the illegal search warrant to issue and, presumably, the false arrest derived from the original sin of the ill-gotten search warrant. (*See* Opp'n 9; FAC ¶¶ 50, 54.) Accepting as true Plaintiffs' argument that they are qualified patients, Defendants may have had probable cause to arrest Plaintiffs Sneller and Smith based on the totality of circumstances at the time of the raid, including the number of marijuana plants at the collective. *See Kelly*, 47 Cal. 4th at 1013 ("So long as the authorities have probable cause that possession or cultivation has occurred, law enforcement officers may arrest a person for either crime regardless of the arrestee's having a physician's recommendation or approval.").

///

///

In such an instance, Plaintiffs could have asserted an affirmative defense at trial, but the arrest itself would have been valid and not a constitutional violation. Thus, the Court finds that Plaintiffs fail to state a claim for relief as to false arrest.

### B. Malicious Prosecution

"In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right." *Flournoy v. Sacramento Cnty. Sheriff Dep't*, No. 11-cv-2844-KJM-EFB P, 2017 WL 4237868, at *28 (E.D. Cal. Sept. 25, 2017) (quoting *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (alteration and citation omitted)). "Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy*, 368 F.3d at 1067 (citation omitted). "However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id.* (citations omitted).

Here, Plaintiffs allege that "Defendants Clark and Stevens falsely, intentionally and maliciously arrested plaintiffs Smith and Sneller without probable cause and recommended that false charges be filed against them, despite the fact that defendants Clark and Stevens knew at all times . . . that plaintiffs were engaged in legal conduct." (FAC ¶ 54.)

A malicious prosecution claim lies where a local official knowingly provided misinformation or engaged in bad faith conduct that was instrumental in initiating legal proceedings. *See Awabdy*, 368 F.3d at 1067. Thus, to proceed with their claim, Plaintiffs must establish the predicate wrongdoing—that Defendants did not have probable cause for the search or arrest. The Court has determined that Plaintiffs fail to state a claim for judicial deception and false arrest, *see supra* Sections I & II.A; thus, there was probable cause for

the search and the arrest. Because Plaintiffs have not established a lack of probable cause, the Court finds that they do not state a claim for malicious prosecution. Consequently, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiffs' fifth cause of action.

### III.    First Claim: *Monell* Claim Against County Defendants

Plaintiffs' first cause of action is for a violation of civil rights under section 1983 against Defendants County of San Diego and San Diego County Sheriff's Department, (collectively, the "County Defendants"). A government entity may not be held liable under section 1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978). To establish liability for governmental entities under *Monell*, a "plaintiff must show: (1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (alterations in original) (internal quotation marks omitted) (quoting *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).

Defendants advance a variety of arguments but, as pertinent here, they argue that Plaintiffs fail to allege an underlying constitutional violation. (MTD 19 (citing *City of Los Angeles v. Heller*, 475 U.S. 796 (1986); *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994); *Quintanilla v. City of Downey*, 84 F.3d 353 (9th Cir. 1996)).)

Plaintiffs argue that they have established the underlying constitutional deprivation and that they are "protected under the Fourth Amendment from illegal arrest and illegal s[ei]zure of property, and from the custom, policy and practice of a governmental entity that allows illegal police conduct." (Opp'n 5.) Plaintiffs again allege that *Monell* liability may be imposed for a failure to properly train and supervise deputies. (FAC ¶ 37.) Plaintiffs allege no other constitutional deprivation other than violation of their Fourth

Amendment right to be free from illegal arrest and seizure of property and acknowledge that there is no federal right to access to medical marijuana. (Opp'n 5.)

As previously discussed, Plaintiffs fail to state a claim for a deprivation of their Fourth Amendment rights. *See supra* Sections I.B.2 & II. The underlying constitutional deprivation is a necessary element of a *Monell* claim. *See Plumeau*, 130 F.3d at 438; *see also* 42 U.S.C. § 1983 (creating civil liability for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws"). Thus, Plaintiffs' *Monell* liability theory must also fail. The Court therefore **GRANTS** Defendants' Motion to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiffs' first cause of action.

## IV. Second Claim: Conspiracy to Violate Civil Rights Under § 1983

With respect to their second cause of action for conspiracy to violate civil rights, Plaintiffs allege that "all individual named defendants herein acted in concert and conspired to intentionally have plaintiffs subjected to false arrest and illegal and false confiscation of legally grown medical marijuana." (FAC ¶ 41.) Plaintiffs further allege that "the conduct of all individual defendants herein was motivated by evil motive and intent" and that "all individual defendants named herein exhibited reckless and callous indifference to the plaintiffs['] rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and the Constitution of the State of California." (*Id.* ¶ 43.)

"Conspiracy is not itself a constitutional tort under § 1983. . . . It does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc) (citing *Cassettari v. Nev. Cnty.*, 824 F.2d 735, 739 (9th Cir. 1987) ("The insufficiency of these allegations to support a section 1983 violation precludes a conspiracy claim predicated upon the same allegations.")). The Court finds that because Plaintiffs' do not adequately plead an underlying constitutional violation, Plaintiffs' conspiracy claim must also fail. *See Lacey*, 693 F.3d at 935; *see also supra* Section I.B.2. Consequently, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiffs' second cause of action.

15-CV-854 JLS (MDD)

## V.    State Law Claims

Section 1367 of Title 28 of the United States Code allows a federal district court to hear all state law claims as long as there is an independent basis for jurisdiction. Under section 1367, a district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Supreme Court has held that supplemental jurisdiction "may be exercised when federal and state claims have a 'common nucleus of operative fact' and would 'ordinarily be expected to [be tried] all in one judicial proceeding.'" *Osborn v. Haley*, 549 U.S. 225, 245 (2007) (alteration in original) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). However, a court may decline to exercise supplemental jurisdiction over any state claim if (1) "the claim raises a novel or complex issue of State law," (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," (3) "the district court has dismissed all claims over which it has original jurisdiction," or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1)–(4).

"In *Gibbs*, the [Supreme] Court stated that "if federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (second alteration in original) (quoting *Gibbs*, 383 U.S. at 726). In *Carnegie-Mellon*, the Court clarified that this was not a mandatory rule, but rather "simply recognizes that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *Id.*

In a similar case involving § 1983 claims for judicial deception, probable cause, and false arrest involving marijuana cultivation, the district court declined to exercise supplemental jurisdiction because of complex state law immunity issues. *See Call*, 254 F.

Supp. 3d at 1069–70 (citing Cal. Gov't Code § 821.6; 28 U.S.C. § 1367(c)(1)). The *Call* court more thoroughly discussed the complex state law issues, but cited two Ninth Circuit opinions that would seemingly yield different results. *Compare Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th Cir. 2007) (applying Cal. Gov't Code § 821.6 to actions taken in preparation for formal proceedings), *with Garmon v. Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016) (applying § 821.6 only to malicious prosecution claims). Because of the complex issues and lack of federal claims, this Court agrees with the approach taken by the *Call* court. Accordingly, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' fourth, sixth, and seventh causes of action. Because the dismissal of the state law claims are without prejudice, Plaintiffs are free to pursue them in state court.

## VI. Leave to Amend

The Court must consider whether to grant leave to amend. When determining whether to grant leave to amend, Federal Rule of Civil Procedure 15(a)(2) instructs Courts to "freely give leave when justice so requires." However, leave to amend may be denied at the District Court's discretion if there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Not all of the *Foman* factors are equal—"[p]rejudice is the 'touchstone of the inquiry under rule 15(a).'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam) (quoting *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)). Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend. *Id.* (citations omitted).

The Ninth Circuit has noted the extent to which the presumption extends. In *Eminence Capital*, the Ninth Circuit reversed a district court that denied leave to amend even though the plaintiffs had three "bites at the apple." *Id.* at 1053. The Circuit

determined that the plaintiffs had not filed three substantially similar complaints alleging substantially similar theories—"it [was] not accurate to imply that plaintiffs had filed multiple pleadings in an attempt to cure pre-existing deficiencies." *Id.*

Although Defendants have not made any showing of prejudice, there is a strong showing that amendment would be futile because of Plaintiffs' repeated failures to cure known deficiencies. Here, Plaintiffs have had four opportunities to re-plead their causes of action with sufficient factual allegations to state a claim for relief. Unlike *Eminence Capital*, Plaintiffs have filed multiple pleadings in an attempt to cure the same factual deficiencies of the same claims. Although Plaintiffs removed two State law claims, and added two others after the first Motion to Dismiss Order, since that time, Plaintiffs have not amended their complaint to state different causes of action; rather, each amendment attempted to cure the factual deficiencies the Court noted in this and prior Orders. Thus, each complaint focused on the lack of factual detail sufficiently to state a claim, and each complaint failed.

After each iteration of the complaint, the Court provided in-depth decisions explaining the basis for dismissal, yet Plaintiffs still have failed to meet the required pleading requirements. Failure to correct identified deficiencies "is a strong indication that the plaintiffs have no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (quoting *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1098 (9th Cir. 2002), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)). Therefore, the Court will deny leave to amend.

///
///
///
///
///
///
///

## CONCLUSION

In light of the above, the Court **GRANTS** Defendants' Motion to Dismiss. (ECF No. 40.) The Court **DISMISSES WITH PREJUDICE** Plaintiffs' federal claims and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' state law claims. The Court **DENIES LEAVE TO AMEND**. This Order ends the litigation in this matter. The Clerk **SHALL** close the file.

**IT IS SO ORDERED.**

Dated: September 18, 2018

Hon. Janis L. Sammartino
United States District Judge

23